IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, et al., | : | HON. JEROME B. SIMANDLE |
|  | : | Civil No. 96-3166 (JBS/AMD) |
| Plaintiffs, | : |  |
| v. | : | **OPINION** |
| SOUTH JERSEY CLOTHING CO., INC., et al., | : |  |
| Defendants. | : |  |

APPEARANCES:

Louis Giansante, Esq. (argued)
GIANSANTE & COBB
23 E. Main Street
Moorestown, NJ 08057
     Attorney for Intervenor-Movants Richard Marolda, Sherry
     Marolda, Rigi Holdings, LLC, and Marolda Farms, Inc.

Brian G. Donahue (argued)
United States Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC 20530
     Attorney for the United States of America

Louis G. Karagias, DAG (argued)
Office of the New Jersey Attorney General
RJ Hughes Justice Complex
25 Market Street
P.O. Box 093
Trenton, NJ08625-0093
     Attorney for the New Jersey Department of Environmental
     Protection

John S. Favate, Esq. (argued)
HARDIN, KUNDLA, MCKEON, POLETTO & POLIFONI, PC
673 Morris Avenue
P.O. Box 730
Springfield, NJ 07081-0730
     Attorney for Intervenor The North River Insurance Company

Jason Pozner, Esq. (argued)
Michael H. Cohen, Esq. (argued)
SAIBER LLC
18 Columbia Turnpike
Suite 200
Florham Park, NJ 07932
     Attorneys for Intervenor Insurance Company of the State of
     Pennsylvania

Michael E. Hrinewski, Esq.
Suzanne Cocco Midlige, Esq. (argued)
COUGHLIN DUFFY, LLP
350 Mount Kemble Avenue
P.O. Box 1917
Morristown, NJ 07962-1917
     Attorneys for Intervenors Maryland Casualty Company, Zurich
     American Insurance Company, and Continental Insurance
     Company

**SIMANDLE**, Chief Judge:

## I.  INTRODUCTION

     This matter is before the Court on the pending motion for
relief from this Court's September 25, 2002 Consent Decree or
alternatively to reopen the case and intervene by non-parties
Richard Marolda, Sherry Marolda, Rigi Holdings, LLC and Marolda
Farms, Inc. (hereinafter "Maroldas" or "Marolda Litigants").
[Docket Item 22.]  Several insurance companies have intervened
and filed opposition to the Maroldas' motion.  The government has
also filed opposition.

     The underlying action was filed by the United States against
South Jersey Clothing Company (which named Garden State Cleaners
as a third-party defendant) pursuant to Section 107 of the
Comprehensive Environmental Response, Compensation and Liability
Act (CERCLA) seeking reimbursement of response costs for release

of hazardous substances incurred at the South Jersey Clothing Company/Garden State Cleaners Superfund Sites in Minotola, New Jersey.  The case was ultimately settled in 2002 via a Consent Decree which incorporated settlement agreements between South Jersey Clothing Company, Garden State Cleaners and their respective insurers.  These settlement agreements purported to release the insurers from any past, present or future liability with regard to the site.  The insurance companies funded the settlement but were never made parties to the CERCLA action.  The case is currently closed.

The Maroldas, who were likewise not parties to the CERCLA case, then discovered that their farm, which is located about a mile down-gradient of the site, had contaminated groundwater as a result of South Jersey Clothing Company and Garden State Cleaners' contamination.  The Maroldas brought suit against these PRPs in the Superior Court of New Jersey in 2006 and obtained a default judgment.  The judgment was returned unsatisfied.  The Maroldas then moved in state court to enforce the judgment directly against the insurance companies pursuant to a New Jersey statute, N.J.S.A. 17:28-2.  The insurance companies moved to dismiss the complaint based on the site release incorporated into the Consent Decree.  In the interest of comity, the state court declined to interpret the Consent Decree and directed the Maroldas to file for relief from the Consent Decree in federal

court, which they have now done.

The issue before the Court is whether the 2002 Consent
Decree and its incorporated settlement bars recovery upon the
underlying insurance policies by the Maroldas, who were non-
parties to the original CERCLA action, who were allegedly injured
by the contamination caused by the insureds prior to the
execution of the Consent Decree, and who had no notice that the
insurers were settling claims with their insureds through the
CERCLA action in a manner that would purport to make insurance
coverage unavailable for subsequent claims of third-parties
against the insureds.

## II.   BACKGROUND

This action arose from South Jersey Clothing Company
("SJCC") and Garden State Cleaner's ("GSC") contamination of
local ground water around their property.  In 1988, the United
States Environmental Protection Agency ("USEPA") sent a notice to
SJCC and GSC that it intended to place both sites on the USEPA's
National Priorities List under the federal Superfund Program.
The USEPA conducted studies of the sites and concluded that the
operations of both SJCC and GSC contaminated the groundwater in
the vicinity of those sites.

The United States then brought the instant action in 1996
pursuant to Section 107 of the Comprehensive Environmental

Response, Compensation and Liability Act (CERCLA) seeking reimbursement of response costs.  GSC was added by SJCC as a third party defendant based on the alleged contribution of contamination from GSC.

In addition to the instant 1996 case, three other actions were filed relating to SJCC's and GSC's environmental contamination from 1991-2001:

- SJCC v. Continental Insurance Co., No. CUM-L-1038-91, a 1991 state court insurance coverage action asserted by SJCC against its insurers.

- Transferini v. The C.N.A. Insurance Companies, No. L-317-97, a 1997 state court insurance coverage action asserted by GSC against its insurers.

- New Jersey Dept. of Environmental Protection v. SJCC, No. 01-4379, a 2001 federal court CERCLA and Spill Act action against SJCC and GSC brought by the NJDEP.

After discovery began in the 1996 action, it became clear that GSC and SJCC could not meaningfully pay a judgment and the only assets available were proceeds from GSC and SJCC's insurance companies.  In order to settle the matter, SJCC and GSC needed to access the proceeds from their insurance companies, which disputed that coverage was available for the polluting activities of SJCC and GSC.  USEPA, SJCC and GSC entered into court-sanctioned mediation and it became apparent that the parties

5

wanted to enter into a global settlement to address all four pending actions.  The 1996 action was then administratively terminated by the Court in order to allow the parties to focus on achieving a mediated settlement.  [Docket Item 12.]

The case was then reopened in 2002 by the USEPA in order to lodge the Consent Decree.  Both federal actions, United States v. SJCC, No. 96-3166, and New Jersey Dept. of Environmental Protection v. SJCC, No. 01-4379, were consolidated for purposes of entering the consent decree.  The state court actions were never removed to this court, but the resolution of those cases was coordinated with the settlement of the enforcement actions brought by the USEPA and the NJDEP.  The Consent Decree was then signed by the Court on September 25, 2002.  [Docket Item 21.]

The Consent Decree is the subject of the instant motion for relief.  The Consent Decree resolved the USEPA's enforcement action and memorialized representations by SJCC and GSC to the USEPA that the clean-up liabilities at their respective sites greatly exceeded the assets of the companies and the individuals who owned them.  Importantly, the Consent Decree incorporated multiple appendices[1] which were Settlement Agreements and Releases executed by SJCC, GSC and their insurers.  These

---

[1] Appendix A is the Maryland Casualty Release; Appendix B is the Insurance Company of Pennsylvania Release; Appendix C is the Zurich Release and the North River Release; and Appendix D is the Continental Release.

6

Settlement Agreements and Releases were in essence "site release" agreements wherein SJCC and GSC released their insurance carriers from any other potential liabilities associated with the ground water contamination on their property.  The federal and state governments agreed to compromise their claims against SJCC and GSC, and the insurers agreed to fund this compromise by paying from the disputed coverages but being released by SJCC and GSC from any further liability for coverage on the disputed policies. The insurers, who were never parties to the federal litigation, then made payment to the federal and state governments in exchange for the release from any further liability in connection with the properties.  The pending state court actions against the insurers were then mooted.  In addition, the state government and federal government executed covenants not to sue the insurers, GSC and SJCC.

Prior to executing the Consent Decree, there was a 30-day period of public notice.  There is a dispute as to whether the Marolda Litigants, who own and cultivate farmland down gradient of the SJCC and GSC sites were notified of this litigation, the Consent Decree, or the site release agreement.

The Maroldas alleged that their groundwater and wells were contaminated by SJCC and GSC's pollutants and as a result, the Maroldas' farms were severely damaged.  In 2006, the Marolda Litigants filed an action in New Jersey state court seeking

7

compensation against SJCC and GSC.  In 2008, default judgment was entered against SJCC and GSC in the amount of $9,170,600 after a proof hearing.  The Maroldas then attempted to execute the judgment against SJCC and GSC and their writ of execution was returned unsatisfied in December 2010.  (Marolda Ex. G.)

Consequently, in February 2011, the Marolda Litigants filed a post-judgment action in New Jersey state court against SJCC and GSC's insurers encaptioned Marolda Farms, Inc., et al. v. Maryland Casualty Insurance Co., et al., Docket No. Atl-L-861-11, seeking to reach the proceeds from the policies issued to SJCC and GSC pursuant to N.J.S.A. 17:28-2.  The following insurance companies were named as defendants in this state court proceeding: (1) The Maryland Casualty Insurance Co.; (2) The Insurance Company of the State of Pennsylvania; (3) Zurich American Insurance Co.; (4) North River Insurance Co.; (5) Continental Insurance Co. (hereinafter "the Insurers").

The Defendants filed motions to dismiss and argued that the Maroldas' claims against them were prohibited by this Court's 2002 Consent Decree including their site releases from the insureds and from the USEPA and the NJDEP.  Superior Court Judge Kane granted the Defendants' motion to dismiss without prejudice, ruling that he lacked jurisdiction to hear the claims asserted in the Maroldas' complaint and directing the Marolda Litigants to take their argument to federal court.  Specifically, Judge Kane

found that the Defendant Insurance Companies entered into a
settlement agreement and release with SJCC and GSC.  This
agreement was then incorporated into the 2002 Consent Decree and
approved by this Court.  As a result, the state court held it
could not make a determination that the settlement agreement and
release was void against public policy when this Court already
ruled upon the issue in incorporating the agreement into the
Consent Decree.  Judge Kane advised the Maroldas to seek
reconsideration of this Court's finding that the settlement
agreement and release does not violate public policy.

The New Jersey Appellate Division affirmed Judge Kane's
ruling.  The Appellate Division found that the Superior Court had
jurisdiction to hear the Maroldas' claims, but given that the
District Court retained jurisdiction to enforce the terms of the
2002 Consent Decree, comity required the issue be presented first
to this Court in the event this Court wished to exercise
jurisdiction.

As a result of the Appellate Division ruling, the Maroldas
filed the instant motion to be relieved from the 2002 Consent
Decree or in the alternative to reopen and intervene in order to
argue the lawfulness of the settlement agreement and release
between SJCC/GSC and their insurance companies.  All five
insurance companies -- Maryland Casualty Company, The Insurance
Company of the State of Pennsylvania, Zurich American Insurance

Co., North River Insurance Company, and Continental Insurance
Company -- have filed opposition to the Maroldas' motion. None
of these insurance companies or the Maroldas were parties in the
1996 action. In addition, the United States filed a brief in
opposition to the Maroldas' motion for relief from the Consent
Decree, which the State of New Jersey adopts.

This Court subsequently issued an order allowing the
Insurers and the Marolda Litigants to intervene for purposes of
this motion for relief. [Docket Item 34.] The Court then heard
oral argument on June 7, 2013 and July 11, 2013.


**III. DISCUSSION**

The Marolda litigants filed this motion seeking relief from
the Consent Decree pursuant to Fed. R. Civ. P. 60(b)(4) and
(b)(5). There are several issues before the Court. First, the
Court must address whether it has jurisdiction to hear the
instant 60(b) motion. Second, the Court must analyze whether the
Marolda litigants have standing to bring their Rule 60 motion and
whether this motion was timely filed. Third, the Court must
determine whether the settlement agreements were properly
incorporated into the Consent Decree and analyze the scope of the
site releases contained in the settlement agreements. Fourth,
the Court must analyze whether notice pursuant to CERCLA bars
this type of claim and whether the Maroldas received actual or

constructive notice of the settlement agreements.  Finally, the
Court must determine if the Maroldas' claims are barred by res
judicata as a result of the previous state court declaratory
judgment actions or the CERCLA action.

### A.   Jurisdiction pursuant to Rule 60(b)

This issue is not contested by the Marolda Litigants or the
Insurers.  All agree that the Court properly retained
jurisdiction pursuant to Paragraph 56 of the Consent Decree to
enforce the agreement.  Paragraph 56 provides: "This Court shall
retain jurisdiction of this matter for the purpose of enforcing
the terms of this Consent Decree."  (Consent Decree ¶ 56.)  See
Kokkonen v. Guardian Life Insurance Co. of America, 511 U.S. 375
(1994)(holding that a district court properly exercises
jurisdiction over a settlement agreement when the court expressly
retains jurisdiction in its order or embodies the terms of the
settlement agreement in its dismissal order).  The issue before
the Court is whether the terms of the settlement agreements
incorporated into the Consent Decree can be enforced against the
Marolda Litigants.  Consequently, the Court has jurisdiction
pursuant to the terms of the Consent Decree to hear the Maroldas'
motion for relief.

### B.   Standing and Timeliness under Rule 60(b)

The Insurers and the government argue that the Marolda
Litigants lack standing to bring a Rule 60 motion because they

were not parties to the underlying actions.  In addition, the
Insurers and the government contend that this Rule 60 motion is
out of time.  The Marolda Litigants do not dispute that they were
not parties to the federal CERCLA action; however, the Maroldas
maintain that a non-party can bring a Rule 60(b) motion under
appropriate circumstances.  The Marolda Litigants also argue that
their action against the Insurers was filed within six weeks of
the writ of execution being returned unsatisfied against SJCC and
GSC and therefore is timely.

### 1.  Standing under Rule 60(b)

There is a strong argument that the Marolda litigants do not
have standing to bring the instant Rule 60 motion.  Rule 60
typically applies only to parties seeking relief from a court's
order.  Fed. R. Civ. P. 60(b) provides:

> Grounds for Relief from a Final Judgment, Order, or
> Proceeding. On motion and just terms, the court may
> relieve a party or its legal representative from a final
> judgment, order, or proceeding for the following reasons:
> . . .
>> (4) the judgment is void;
>> (5) the judgment has been satisfied,
>> released, or discharged; it is based on an
>> earlier judgment that has been reversed or
>> vacated; or applying it prospectively is no
>> longer equitable; . . .

By its own language, Rule 60 limits those who can seek relief to
a "party or its legal representative."  In this case, the Marolda
Litigants are neither parties nor legal representatives of the
parties in the underlying federal action.

However, courts have held that a non-party may seek relief under Rule 60 where they are "sufficiently connected and identified with the . . . suit." Grace v. Bank Leumi Trust Company of New York, 443 F.3d 180, 188 (2d Cir. 2006)(citing Dunlop v. Pan Am World Airways, Inc., 672 F.2d 1044, 1052 (2d Cir. 1982)). See also Binker v. Commonwealth of Pennsylvania, 977 F.2d 738 (3d Cir. 1992)(citing Dunlop for proposition that a non-party has standing under Rule 60(b) when they are sufficiently connected and identified with the suit).

The issue here is whether the Marolda Litigants' alleged interests in the insurance policies of SJCC and GSC are sufficiently connected to the previous federal litigation so as to confer standing.  The Court finds in the affirmative.

The Maroldas allege they are currently prevented from collecting a nine million dollar judgment because of the settlement agreements in the Consent Decree.  (The Insurers also deny that these policies afford coverage and they have also asserted that coverage was exhausted as to several policies, which are disputes this Court does not have before it.)  They are being actively harmed by the Consent Decree and their interests will continue to be adversely affected unless this motion is heard.  The Insurers zealously contend that the Maroldas are bound by the terms of the settlement agreement that released the Insurers from any further obligations related to the sites.

13

Accordingly, the Court finds that the Maroldas have standing
under Rule 60(b) and that the Maroldas' interests are
sufficiently connected to the suit to permit them to pursue their
motion even though they were not parties to the original 1996
action.

### 2.  Is the 60(b) motion out of time?

The Insurers and the government argue that this Rule 60(b)
motion was filed out of time because the Maroldas are seeking to
contest a 2002 Consent Decree ten years after the fact.

Ordinarily, ten years is an unreasonable amount of time to
file a Rule 60(b) motion.  However, the Maroldas were not parties
to the underlying CERCLA action and the Maroldas' action against
the Insurance Companies did not ripen until the Maroldas'
judgment against SJCC and GSC came back unsatisfied.  The Marolda
Litigants then filed the underlying state court action against
the Insurers within six weeks of the unsatisfied judgment.  It
was not until the Appellate Division directed the Marolda
Litigants to federal court that they realized the state court
would not determine the effect of the CERCLA decree upon the
Marolda's rights in the interest of comity.

Next, the Insurers argue that the community was well
informed of the contamination and clean up efforts on the SJCC
and GSC sites and the Maroldas should have spoken up sooner to
enforce their rights.  This argument depends upon when the

Consent Decree was first raised as a bar to the Maroldas state court action.

The Maroldas brought their initial state court action against SJCC and GSC within the statute of limitations period. The Maroldas then brought the underlying enforcement action against the Insurers promptly after receiving an unexecuted judgment.  Finally, the Maroldas sought this Court's determination of the affects of the 2000 CERCLA consent decree promptly upon the Appellate Division advising them to do so. Consequently, the Marolda Litigants cannot be said to have sat on their rights.

Therefore, under these unique circumstances, the Court finds that the Maroldas' Rule 60(b) motion is timely.

**C. The Settlement Agreements Incorporated in the Consent Decree**

None of the parties argue that the Court did not have jurisdiction to enter the Consent Decree.  It is well established that the Court had jurisdiction over the subject matter of the Consent Decree pursuant to 28 U.S.C. § 1331(a) and § 1345 and CERCLA, 42 U.S.C. §§ 9606, 9607 and 9613(b).  Indeed, CERCLA expressly states that settlements with potentially responsible parties in response cost actions "shall be entered in the appropriate United States district court as a consent decree." 42 U.S.C. § 9622(d)(1)(A).

The Court therefore had supplemental jurisdiction pursuant

15

to 28 U.S.C. § 1367(a) over the incorporated settlement agreements between GSC, SJCC and their insurers since these settlement agreements were inextricably linked to the Consent Decree.  Since all funding of the compromise settlement was coming from the five insurers, it was reasonable that their declaratory judgment settlement with the PRPs be referenced in the consent decree herein.  CERCLA itself recognizes that other settlements might be necessary to effectuate a consent decree. See 42 U.S.C. § 9622(m) ("[I]n the case of consent decrees and other settlements under this section (including covenants not to sue), no provision of this Act shall be construed to preclude or otherwise affect the applicability of general principles of law regarding the setting aside or modification of consent decrees or other settlements.")[2]

Therefore, the Court properly exercised jurisdiction in incorporating the settlements between GSC, SJCC and their Insurers into the Consent Decree.

This motion centers on the language in the Settlement

---

[2] The government in its opposition argues that it did not settle the case pursuant to 42 U.S.C. § 9622 but instead settled this case pursuant to the inherent authority of the Attorney General of the United States.  (Gov't Opp. at 8 n.5.)  For reasons discussed infra in Section III.D, the Court finds that this was a CERCLA settlement and was represented to the public and to the Court as a CERCLA settlement.  Nothing in the stipulations between the United States and the PRPs disclaims CERCLA as the source of authority for the underlying action and its settlement.  Therefore, the government's argument that 42 U.S.C. § 9622(m) does not apply to this action is unpersuasive.

16

Agreements between the GSC, SJCC and their Insurers.  Therefore, the Court must examine what the settlement agreements stated and what consideration was provided.

Four settlement agreements were incorporated into the consent decree and contain similar release language.  The Maryland Casualty Company Release states:

> In consideration of the promises contained in this Agreement and the payments by Maryland Casualty as set forth in Section 3.1, SJCC hereby releases and forever discharges Maryland Casualty from any an all past, present and future liabilities, duties or obligations under the Policies for any and all known or unknown Environmental Claims arising out of or in any way related to the Site At Issue, including, but not limited to, any obligation on the part of Maryland Casualty to investigate, defend, indemnify, pay defense costs, settle claims or suit, or pay settlements or judgments relative thereto.

(Consent Decree, Appendix A ¶ 4.1.)  The same language is contained in the Zurich American Insurance Company and North River Insurance Company's release.  (Id., Appendix C ¶ 4.1.) Continental Insurance Company entered into a similar release with GSC which provides:

> In consideration of the promises and undertakings provided for herein and the payment provided for in Paragraph 4 hereof, GSC unconditionally releases and forever discharges Continental from any and all past, present and future claims, liabilities, obligations, demands, rights, causes of action, losses, damages, and responsibilities of every type and kind, known and unknown, including, but not limited to, any obligation to provide a defense, pay defense costs for, settle or pay any judgments with respect to any and all past, present or future claims arising from, connected with or relating to the Sites, as well as any and all claims of every type and kind arising from, connect with or relating to any

17

> policy or policies of insurance issued by Continental to
> GSC . . . .  This release includes, but is not limited
> to, any and all past, present and future claims against
> Continental for damages of every type and kind,
> including, but not limited to, claims for property
> damage, bodily injury and personal injury, as well as
> attorneys' fees, litigation costs, and interest.  This
> release is general, unconditional and without exception.
> GSC and Continental acknowledge and agree that the
> Release herein and the Covenants Not to Sue by the United
> States and State of New Jersey contained in the Consent
> Decree to be entered in the South Jersey litigation are
> contingent upon the timely payment of the Settlement
> Payment provided for in Section  herein.

(Id., Appendix D ¶ 3.)  The Insurance Company of the State of

Pennsylvania entered into a similar release with SJCC which

states:

> In consideration of payment of the Settlement Amount and
> the other provisions of the Agreement, SJCC hereby
> releases, remises and forever discharges ISOP from any
> and all duties, obligations, liabilities and
> responsibilities of any nature or kind whatsoever arising
> under any and all Policies with respect to Environmental
> Claims at or arising from the SJCC Site, whether past,
> present or future, known or unknown, or asserted or
> unasserted (including, but not limited to, claims for bad
> faith, malicious prosecution, statutory or regulatory
> violation or punitive or other extra-contractual damages
> of any type). . . .
>
> From and after the effective date of this Agreement, ISOP
> shall have no further duties or obligations based upon,
> arising out of or related in any way to the Policies with
> respect to any Environmental Claims released hereunder,
> and the Policies shall be considered null and void *ab
> initio*, of no further force and effect with respect to
> any Environmental Claims released hereunder.

(Id., Appendix B ¶ 5(a),(f).)

All four settlement agreements involve a release between

SJCC, GSC and their respective insurance companies.  These

releases are silent as to third parties, such as the Marolda
Litigants.

Importantly, all four settlement agreements purport to
release the Insurers from any past, present, future, known or
unknown environmental claims arising from the SJCC site and the
GSC site.  Textually, these releases would encompass negating
coverage for the Maroldas' claims against the insureds, SJCC and
GSC.  The Maroldas' claim arose out of ground water contamination
allegedly caused by contamination from the SJCC/GSC site.  This
contamination allegedly occurred in the early 1990s but was
allegedly unknown to the Maroldas until at least 2000 if not
later.  This clearly falls within the broad terms of the site
release between SJCC/GSC and their Insurers.

The Maroldas are pursuing their action against the Insurers
because they were unable to execute their judgment against SJCC
and GSC as these companies are insolvent.  Consequently, the
Insurers argue that the Maroldas are stepping into the shoes of
the insureds, SJCC and GSC, and cannot have any rights beyond the
insureds.  Since SJCC and GSC released the Insurers from any
further liability with regard to the site, the Insurers argue
that the Maroldas should likewise be barred from seeking damages
against them.

The issue before the Court is whether these releases, which
purport to terminate all liability of the Insurers with regard to

19

the site, are enforceable against the Maroldas who had asserted no claims prior to 2002 and who were not parties to this agreement.  This inquiry turns on whether the Maroldas had a protected property interest in such coverage at the time of the Consent Decree and whether the Maroldas had notice required by due process that their rights were being foreclosed by this agreement.

With regard to whether the Maroldas had a protected property interest in the disputed insurance coverage, there is a colorable argument that such an interest existed and that the Maroldas can bring a direct action against the Insurers.  The public policy of protecting injured third parties from insolvent tortfeasors is embodied in N.J.S.A. 17:28-2.  This statute provides:

> No policy of insurance against loss or damage . . .  and
> for which loss or damage the person insured is liable,
> shall be issued or delivered in this state by any insurer
> authorized to do business in this state, unless there is
> contained within the policy a provision that the
> insolvency or bankruptcy of the person insured shall not
> release the insurance carrier from the payment of damages
> for injury sustained or loss occasioned during the life
> of the policy . . . .

N.J.S.A. 17:28-2.  This statute was enacted approximately 90 years ago and has not been amended since by the Legislature.  The general public policy of protecting injured third parties from insolvent tortfeasors is prevalent.  It is plausible that this statute applies to more than just automobiles, as the Defendants argue.  Otherwise, much of the statutory language is irrelevant.

Further, the New Jersey Supreme Court has emphasized such a public policy in its case law, including Dransfield v. Citizens Casualty Company of New York, 5 N.J. 190 (1950), and In re Gardinier, 40 N.J. 261 (1963).  In Dransfield, the New Jersey Supreme Court held that "[w]hile the injured person has no greater right under the policy than has the assured, he has a cause of action the moment he is injured which ripens into a right of action when he recovers a judgment against the assured whose insolvency is proved by the return of an execution unsatisfied." Dransfield, 5 N.J. at 194.  Consequently, according to the New Jersey Supreme Court, an injured third party is not in privity with the insured as to any suits commenced subsequent to the injury since "the assignee of a chose in action is not concluded by a judgment for or against his assignor in a suit commenced after the assignment." Id.

The New Jersey Supreme Court reiterated this public policy more than ten years later in In re Gardinier.  The issue before the Supreme Court was whether New Jersey was the proper forum to determine the deceased's liability.  In finding that New Jersey was the proper forum, the court reasoned:

> Here the State of New Jersey is the State with the greatest concern, since the accident occurred here, both of the motorists lived here, and the policy of insurance

21

> was sold here with the expectation that it would be performed here. Moreover the issuance of the policy was not a wholly private matter between the insurer and the deceased, for our Legislature almost 40 years ago expressed its interest in the subject by providing for an action by the victim upon the policy after judgment against the insured. R.S. 17:28-2. Accordingly, upon the happening of an accident the injured third party acquires an interest in the policy that cannot be foreclosed by litigation or agreement between insurer and insured alone. Dransfield v. Citizens Casualty Co., 5 N.J. 190 (1950); Century Indemnity Co. v. Norbut, 117 N.J. Eq. 584 (Ch. 1935), affirmed o.b. 120 N.J. Eq. 337 (E. & A. 1936). These circumstances suggest that New Jersey is an appropriate forum in which to litigate the deceased's liability.

In re Gardinier, 40 N.J. at 265.[3]

It is therefore arguable that N.J.S.A. 17:28-2, as well as the reasoning in Dransfield and In re Gardinier, provided the Maroldas with a protected property interest in the insurance policies if the Maroldas were in fact injured, within the meaning of N.J.S.A. 17:28-2, prior to the execution of the 2002 Consent Decree. This issue, however, will not be decided by the Court. The parties agree that this issue is purely an issue of state law and is better addressed by the state court. The Court agrees and

---

[3] The District of New Jersey in Caldwell Trucking PRP Group v. Spaulding Composites Co., 890 F. Supp. 1247 (D.N.J. 1995), discussed the applicability of N.J.S.A. 17:28-2 in an environmental case. In this case, the District Court briefly mentioned that N.J.S.A. 17:28-2 could be used as an avenue for a third party to bring suit against a PRP's insurance company in an environmental action and cited Dransfield in support. Id. at 1253. However, this is in dicta in the court's opinion and not analyzed thoroughly.

will reserve the issue, and all issues relating to the interpretation and application of N.J.S.A. 17:28-2 to the circumstances of the Maroldas' claims against the Insurers, for the state court to decide, as this issue is purely a question of unsettled state law.

More specifically, and as further discussed below, the state court will examine whether the Maroldas had a protected property interest in the insurance policies arising at state law, and, if so, _when_ their property interest arose.  If this property interest existed prior to entry of the Consent Decree, it could not be extinguished by the Consent Decree's terms without observing due process including notice to the Maroldas and an opportunity to be heard, since their property would be taken and they were not parties to the USEPA or NJDEP enforcement actions nor to the declaratory judgment actions between the Insurers and SJCC and GSC.  If this property interest did not exist in the Maroldas prior to the Consent Decree, then the Consent Decree could terminate further insurance coverage owed to SJCC and GSC as a term of the compromise settlements that resolved both the governmental enforcement actions and the private declaratory judgment actions, as discussed below in Section III.F.

However, and only for the purposes of this motion for

relief, the Court will assume that the Maroldas have asserted a
protected property interest in the insurance policies in order to
determine whether the Consent Decree bars this claim from being
pursued.  The Court will assume the viability of this claim for
purposes of analyzing the instant Rule 60(b) motion.

Consequently, the next issue is whether the Maroldas
received notice of the settlement agreements consistent with due
process such that any prior rights in the insurance policies were
terminated and their claim pursuant to N.J.S.A. 17:28-2 is
barred.

### D.  Notice

There is a dispute as to whether the Marolda Litigants, who
own and cultivate farmland directly down gradient of the SJCC and
GSC sites, were notified of this litigation, the Consent Decree,
or the settlement agreements containing the site releases.  The
Insurers and government argue that the Marolda Litigants had
constructive notice and this was sufficient.  The Insurers also
argue that the Maroldas had actual notice through the community
outreach efforts by the USEPA and the DEP during the site clean-
up process.  The Maroldas maintain they did not receive actual
notice because they were never notified of the Consent Decree or
served with the pleadings.  The Maroldas argue that the notice

published in the Federal Register was not sufficient to give them constructive notice that their future right to proceed against the insurance companies was being foreclosed, because that notice described the resolution of the United States' remedial action against GSC and SJCC at the site but made no mention of the Insurers or the extinguishment of the Insurers' further liability for damages caused by these insureds.

There are three aspects to notice that must be analyzed by the Court.  First, the Court must discuss CERCLA Section 122(m), 42 U.S.C. § 9622(m), and its application to the instant action. The second issue is whether the CERCLA notice published in the Federal Register was sufficient to give the Maroldas actual or constructive notice of the settlement agreements in the Consent Decree.  Finally, the Court must analyze whether the community outreach regarding the site contamination and clean up efforts was sufficient to put the Maroldas on constructive notice of the Insurers' settlement with GSC and SJCC in 2002.

### 1.  Effect of 42 U.S.C. § 9622(m)

CERCLA itself contemplates that other settlements will be entered into along with a consent decree.  However, CERCLA does not foreclose the applicability of general principles of law when interpreting the effect of these other settlements.

25

Specifically, Section 122(m) provides:

> In the case of consent decrees and other settlements
> under this section (including covenants not to sue), no
> provision of this chapter shall be construed to preclude
> or otherwise affect the applicability of general
> principles of law regarding the setting aside or
> modification of consent decrees or other settlements.

42 U.S.C. § 9622(m).  Therefore, it is consistent with CERCLA to
apply general principles of law, such as notice, when determining
whether a settlement agreement incorporated into a Consent Decree
is binding on third parties.  This provision is clear.  CERCLA
was not meant to bar people from exercising remedies they would
otherwise have with regard to other, non-CERCLA settlements.

The government argued in its brief and at oral argument that
the Consent Decree at issue in this case was not entered into
pursuant to CERCLA.  Instead, the government maintains that it
settled this case pursuant to the inherent authority of the
Attorney General of the United States.  (Gov't Opp. at 8 n.5.)
The Court finds this representation inconsistent with the record
and procedural history of this case.

First, this action was brought pursuant to CERCLA and sought
reimbursement for response costs incurred and to be incurred as a
result of the contamination of the SJCC site.  SJCC then filed a
third party action against GSC claiming that GSC contributed to
the contamination.  (Consent Decree ¶¶ I.A & B.)  The parties
claimed that the Court had jurisdiction over the Consent Decree
pursuant to "28 U.S.C. §§ 1331(a) and 1345, and 42 U.S.C. §§

9606, 9607 and 9613(b)."  (Consent Decree ¶ II.1.)  The Complaint contains no basis for the United States' claims other than CERCLA.  There is no mention anywhere in the Consent Decree that the United States was settling this case pursuant to its inherent authority rather than the settlement provision in CERCLA, nor that it was resolving claims other than those of the United States and State of New Jersey against the PRPs in the case, namely, SJCC and GSC.

Moreover, the parties followed the settlement procedures under 42 U.S.C. § 9622 for CERCLA Consent Decrees.  The United States lodged the Consent Decree with the Court for a period of thirty (30) days.  42 U.S.C. § 9622(d)(2)(A).  The parties provided the public an opportunity to comment.  42 U.S.C. § 9622(d)(2)(B).  The government filed notice of the Consent Decree in the Federal Register.  42 U.S.C. § 9622(i)(1).  The government entered covenants not to sue with Insurers, the SJCC parties and the GSC parties.  These covenants not to sue were entered pursuant to CERCLA which requires a consent decree to be entered pursuant to 42 U.S.C. § 9622.  42 U.S.C. § 9622(f)(1)(C).  The Consent Decree was a cost recovery settlement wherein the government was reimbursed for a portion of its response costs by compromising its demands in the negotiated settlement.  This settlement is expressly authorized under CERCLA pursuant to 42 U.S.C. § 9622(h).

27

Finally, the publication in the Federal Register was entitled, "Notice of Lodging of Consent Decree Pursuant to Comprehensive Environmental Response, Compensation and Liability Act." (Midlige Ex. A.) This expressly and unequivocally states that the Consent Decree was entered into pursuant to CERCLA, not the government's inherent power to settle cases. The Court will not now find, more than ten years later, that this Consent Decree is not subject to the procedural requirements and protections of CERCLA. Accordingly, the government's argument that CERCLA, and specifically Section 122(m), should not apply when interpreting this Consent Decree, is without merit.

Section 122(m) clearly recognizes that other settlements, such as the ones at issue in this case, might be entered into as a result of a CERCLA consent decree. Section 122(m) expressly recognizes that these ancillary settlements may be enforced or set aside pursuant to general principles of law. Consequently, the issue of whether the Maroldas had notice of the site releases contained in the settlement agreements is relevant and necessary to determining whether the Maroldas are barred by the Consent Decree.

## 2.  Publication of the CERCLA notice

Let us assume again that the Maroldas had a protected property interest in the insurance policies arising under state law before 2002. With regard to the Federal Register

publication, the Court finds this insufficient to put the
Maroldas on notice that such a property right, enforceable
against the Insurers, was being waived by GSC and SJCC.
Publication in the Federal Register pursuant to 42 U.S.C. §
9622(i) is meant to provide notice of a proposed settlement
regarding a CERCLA action, that is, remedial action and cost
recovery.  It is not meant to provide notice to injured third
parties that their rights to recover from a non-party to a CERCLA
action are being adversely affected.  Such a ruling would impose
an unrealistic obligation on the general public to read the
Federal Register on a daily basis regarding the settlement of
lawsuits to which they are not parties or class members, or risk
losing a vested property interest.  The Insurers have cited no
case law which supports this harsh interpretation of the CERCLA
notice provision.


The Insurers have cited United States v. Serafini, 781 F.
Supp. 336, 339 (M.D. Pa. 1992), to further their argument.
Serafini, however, is distinguishable from the instant action.
Serafini involved a CERCLA settlement where the United States
entered a Consent Decree with some of the PRPs and chose not to
settle with other potential defendants.  The United States then
sought reimbursement from the non-settling PRPs for outstanding
costs.  The non-settling PRPs were never parties to the initial
CERCLA action and claimed that they had no notice of the Consent

Decree despite being interested parties.  Id. at 337-38.  The
Middle District of Pennsylvania held that the non-settling PRPs
received constructive notice of the settlement through
publication in the Federal Register and noted that information
was published no less than five times.  Id. at 339.

Serafini is distinguishable because in that case, the non-
parties were PRPs who knew that they faced an alleged liability
to clean-up the alleged site.  Therefore, it is not unrealistic
to impose on absent PRPs the burden of checking the Federal
Register to determine whether their rights or obligations are
being adversely affected.  Furthermore, the contours of the
remediation and cost recovery at a CERCLA site embraced in a duly
published and approved consent decree are not subject to later
objection by other PRPs who chose not to join the settlement
agreement, nor does CERCLA require the United States to join and
settle with all PRPs at a site.  Here, on the other hand, the
Maroldas are injured third party victims, not PRPs.  It is
unrealistic and inequitable to impose a burden on absent third
parties, who are not PRPs, to read the Federal Register and
determine whether their rights are affected when they have no
knowledge that their enforceable rights to recover against
insurers of the tortfeasors may be impaired.

More importantly, the language of the notice published in
the Federal Register does not give any indication that the

30

Insurers, who were not parties to the CERCLA action, were involved in funding the response costs or that settlement agreements between GSC, SJCC and the Insurers were incorporated into the Consent Decree.  The published notice states in its entirety:

> **Notice of Lodging of Consent Decree Pursuant to Comprehensive Environmental Response, Compensation, and Liability Act.**
>
>   Notice is hereby given that on June 21, 2002, a proposed consent decree in *United States v. South Jersey Clothing Company, Inc.* Civil Action No. 96-3166 (JBS), was lodged with the United States District Court for the District of New Jersey.
>   In this action, the United States alleged under section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. 9607, that South Jersey Clothing Company, Inc., is liable for the costs in responding to the release or threatened release of hazardous substances at the South Jersey Clothing Company/Garden State Cleaners Superfund Sites in Minotola, New Jersey (the Sites).  Under the terms of the proposed consent decree, the United States and the State of New Jersey will be paid $4,285,102.00 as reimbursement for past and future response costs with respect to the Sites.  The Department of Justice will receive for a period of thirty (30)  days from the date of this publication comments relating to the proposed partial consent decree. Comments should be addressed to the Assistant Attorney General of the Environment and Natural Resources Division, Department of Justice, Washington, DC 20530.
>   The proposed consent decree may be examined at the Office of the United States Attorney, District of New Jersey, U.S. Courthouse, One John F. Gerry Plaza, Camden, New Jersey, and at U.S. Environmental Protection Agency Region II, 290 Broadway, New York, New York. A copy of the proposed consent decree may also be obtained by mail from the Consent Decree Library, PO Box 7611, U.S. Department of Justice, Washington, DC 20044-7611, or by faxing a request to Tonia Fleetwood, fax no. (202) 514-0097, phone confirmation number (202) 514-1547. If requesting a copy of the proposed consent decree (without

> appendices), please so note and enclose a check in the
> amount of $11.00 (25 cent per page reproduction cost)
> payable to the U.S. Treasury.
>
> Ronald Gluck,
> Assistant Chief, Environmental Enforcement Section,
> Environment and Natural Resources Division.

(Midlige Decl. Ex. A.)

This published notice does not include any reference to the non-party Insurers, does not state that the Insurers funded the response costs or that settlement agreements between the Insurers and GSC/SJCC were being incorporated into the Consent Decree. There is also no mention that the pending state declaratory judgment actions or the NJDEP action were being settled simultaneously. The general public would have no indication that the Insurers were involved in this CERCLA action. There is no mention of appendices (including the appendices containing the releases of the Insurers from future liability) except for mentioning that the cost of obtaining a copy of the Consent Decree is $11.00 <u>without</u> appendices. The Maroldas, as non-parties to the CERCLA action, had no notice that their right under New Jersey law to proceed against the Insurers was being foreclosed from this notice summarizing the terms of the cost recovery settlement. The Insurers' argument that this CERCLA notice was sufficient to trigger further action on the part of the Maroldas to read the Consent Decree is without merit. While the notice was perfectly adequate to put the public on notice

32

about the proposed remedial action and compromise of response costs, this notice only mentions response costs and does nothing beyond stating the amount of liability for SJCC. This notice does not even mention that GSC is liable for a portion of the response costs.

The Insurers want to hold the Maroldas to a standard based on mere speculation and maintain that because a Consent Decree was entered with regard to the sites, the Maroldas should have divined that the Insurers were involved and that the rest of the world was being foreclosed from bringing future claims against the insurers for off-site damages caused by these PRPs' activities at the site. This standard is too exacting, unduly burdensome and unrealistic. If the Insurers wanted to claim the protection of this notice, then they should have insisted on at least being mentioned in the notice as the funders of the response costs who were receiving a total site release against all claims of the governments, the PRPs, and off-site non-parties. They cannot now be heard to claim that this vague publication put the Maroldas on constructive notice that their existing rights against the insurers under N.J.S.A. 17:28-2 were being foreclosed. Therefore, the Court concludes that the CERCLA publication did not put the Maroldas on constructive notice that the Consent Decree included a site release between the Insurers, GSC and SJCC that would work to extinguish any pre-existing

33

property right that they held when the Consent Decree was
approved.

### 3.  Community Outreach

The Insurers' argument that the community outreach efforts
put the Maroldas on notice that their rights were being
foreclosed is equally unpersuasive.  The Maroldas' farm was
approximately a mile and a half from the site.  The Insurers'
community outreach theory fails for two reasons.  First, the
Maroldas' farm was located in a different municipality from the
sites and therefore much of the community outreach which was
aimed at Buena Borough Township (in which Minotola is located)
did not include Buena Vista Township, where the Maroldas' farm is
located.  The Insurers have presented no evidence of community
outreach specifically aimed at Buena Vista or that Buena Vista
residents received notice about and were able to participate in
community meetings in Buena Borough.

Second, and more importantly, none of the community outreach
informed the public that the Insurers were part of the settlement
and were paying the response costs in exchange for their
releases.  There is no evidence that the public was informed in
any way that a site release in favor of the Insurers was being
contemplated by the government or GSC or SJCC.  There is no
indication that members of the public were told that they would
not be able to sue the Insurers if their land or water supply was

34

contaminated and GSC or SJCC were insolvent.

Rather, the community outreach focused on remediating the site and clean up costs.  This is not surprising as CERCLA's purpose is to clean up contaminated sites - not provide an expeditious way for insurance companies to limit their liability to injured third parties.  Burlington Northern and Sante Fe Ry. Co. v. United States, 556 U.S. 599, 602 (2009)(explaining that CERCLA was designed to promote the timely cleanup of contaminated sites and to ensure that the costs of these clean up measures were borne by the parties responsible for the contamination).[4]

None of the transcripts of the town meetings, newspaper articles or published notices to the community that are in the current record contain any mention of the Insurers or the Insurers' intent to enter into a site release with SJCC or GSC. Consequently, the Maroldas cannot be deemed to have constructive or actual notice as a result of the community outreach.

---

[4] We also bear in mind the context of the claims the Maroldas are making.  They seek to recover for property damage allegedly caused by SJCC and GSC; they do not seek to reopen the remedy at the site or to question the remedial actions that have been taken under the Consent Decree.  If they did so, the Court would have little hesitation in finding the published notice sufficient, adequately summarizing the proposed CERCLA settlement for response costs, and placing the general public, including the Maroldas, on inquiry notice to inspect the complete settlement proposal in the available locations listed.  Moreover, the remedial measures were the subject of the public outreach, and such outreach efforts, occurring within a few miles of the site and of the Maroldas' farm, would further demonstrate adequate and reasonable community notification.

Therefore, the Court finds the Insurers argument without merit.

### 4. Conclusion

For the reasons discussed above, the Court concludes the Maroldas did not have actual or constructive notice of the settlements incorporated into the Consent Decree. Consequently, the Consent Decree and incorporated settlements cannot foreclose any protected right the Maroldas may have had in the policies at issue pursuant to N.J.S.A. 17:28-2 at the time the Consent Decree was approved in 2002.

**E.  Res Judicata**

To the extent the Insurers argue that the Maroldas are bound by the Consent Decree under a theory of res judicata, this argument is unpersuasive and need be only briefly addressed here. The Consent Decree settled the federal CERCLA litigation and the incorporated settlements also required the dismissal of the state declaratory judgment actions brought by SJCC and GSC against their Insurers. The federal CERCLA action is not preclusive against the Maroldas because the Maroldas were not joined as parties, they are not themselves PRPs, they had no notice that the incorporated settlement agreements sought to foreclose their rights and their interests were not represented by anyone involved in the CERCLA action. The state declaratory judgment actions are not preclusive because the New Jersey Declaratory Judgment Act prohibits this type of action from having preclusive

36

effect against non-parties.

### 1.  Preclusive Effect of the Federal Court Judgment

It is well established that generally "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." Taylor v. Sturgell, 553 U.S. 880, 884 (2008).  The preclusive effect of a federal court judgment against a non-party is determined by federal common law and is subject to due process limitations.  Id. at 891.

There are six recognized exceptions to the general rule prohibiting non-party preclusion under federal common law.  A non-party may be bound by a previous judgment when: (1) the non-party agrees to be bound; (2) there is a pre-existing substantive legal relationship between the non-party and a party to the judgment; (3) the non-party was adequately represented by someone with the same interests who was a party to the previous suit; (4) the non-party assumed control over the litigation; (5) the non-party is the designated representative or proxy of a person who was a party to the prior judgment; and (6) a special statutory scheme may expressly foreclose successive litigation by non-litigants if the scheme comports with due process.  Id. at 893-95.

None of these six exceptions applies to the instant case. The Maroldas did not agree to be bound by the Consent Decree or

the incorporated settlement agreements.  There was no pre-existing legal relationship between the Maroldas and the parties to the CERCLA action such that the Maroldas would be bound by the decisions of GSC, SJCC, or the Insurers.  As discussed supra in Section III.C., it remains to be determined whether SJCC and GSC are deemed by New Jersey law to have assigned their rights under the policies to the Maroldas prior to the issuance of the Consent Decree.  If this is found to have occurred, then GSC and SJCC would not have had the authority to enter into the settlement with the Insurers to the extent the settlement purports to foreclose the Maroldas' rights.  See Section III.C., supra.

Third, the Maroldas were not adequately represented by any of the parties to the CERCLA action or the Insurers in the settlement agreement.  None of these parties sought to compensate injured third parties for the damage done to their property by the contamination.  The government sought reimbursement for its response costs, SJCC and GSC sought to determine the extent of their liability to the government and the Insurers sought to limit their liability with regard to the site.  Fourth, at no point did the Maroldas assume control over the CERCLA litigation.

Fifth, the Maroldas are not the proxy or designated representative of a party bound by the Consent Decree.  To the extent the Insurers argue that the Maroldas are stepping into the shoes of GSC and SJCC as a judgment creditor, there is a

colorable argument, to be determined when the Superior Court suit resumes, that the Maroldas acquired rights under the policies prior to the execution of the Consent Decree.  Consequently, GSC and SJCC would not have been able to waive the Maroldas' rights without the Maroldas being a party to the settlement agreement. This issue is purely a state law issue, as discussed _supra_ in Section III.C., and will not be decided by this opinion and remains for adjudication in the underlying Superior Court litigation.  Therefore this cannot be a basis for res judicata at this time.

Finally, the CERCLA statutory scheme does not expressly foreclose this type of litigation.  CERCLA was enacted as a vehicle for the government to recover response costs from potentially responsible parties for the release of hazardous substances.  CERCLA was not meant to foreclose the rights of injured third parties to seek damages against responsible parties for harm that occurs on their property.  There is no statutory language expressing this intent.  Rather, CERCLA expressly recognizes that Consent Decrees are not meant to prohibit setting aside settlements under general principles of law.  42 U.S.C. § 9622(m).  Therefore, again assuming for the sake of argument that the Maroldas had a protected property interest arising under state law before the Consent Decree was approved, the CERCLA statutory scheme itself does not bar the Maroldas from seeking

relief from the Insurers under these circumstances.

Further, the preclusive effect of a federal judgment is
subject to due process limitations.  As discussed <u>supra</u> in
Section III.D, the Maroldas did not receive notice of the
settlement agreements incorporated into the Consent Decree.  The
CERCLA notice, which is supposed to provide a transparent
discussion of the response action to a contaminated site, did not
state that the Insurers were funding the settlement or that GSC
and SJCC were too poor to pay the response costs, nor that the
Insurers (or at least some of them) had reached compromises to
contribute a fraction of their potential policy limits in
exchange for extinguishing any further financial obligation not
only to their insureds and to the federal and state governments,
but more pertinently to off-site landowners for future or past
claims.  Without disclosing this information in the notice, the
public had no way of knowing that SJCC and GSC were on the verge
of bankruptcy and would be insolvent when sued for damages to
surrounding property, and would have no remaining insurance
coverage.

Accordingly, the Court finds that the Consent Decree is not
res judicata as to the Maroldas' claims against the Insurers.

### 2.  Res Judicata Effect of State Court Judgment

The New Jersey Declaratory Judgment Act provides: "No
declaratory judgment shall prejudice the rights of persons not

parties to the proceeding." N.J.S.A. 2A:16-57. The Maroldas
were not parties to the underlying state court declaratory
judgment actions. Consequently, New Jersey law is also clear
that these actions cannot be preclusive against the Maroldas.

Therefore, res judicata does not apply to bar the Maroldas'
claims.

### F.  Upholding CERCLA Consent Decree as against Unripe Future Interests

The Court has held above that, if the Maroldas had a
protected property interest in the insurance policies under
N.J.S.A. 17:28-2 prior to approval of the Consent Decree in 2002,
they were not granted due process, consisting of actual or
constructive notice and an opportunity to be heard, before that
vested interest could be eliminated. It is fundamental that the
property of an absent party cannot be taken without observing due
process.

That same result does not obtain, however, if the Maroldas'
interest as of 2002 was not a protected property interest.
Again, the Superior Court must determine this issue. If, for
example, the Superior Court determines that the Maroldas did not
have a protected property interest until they obtained a judgment
against the insureds SJCC and GSC in 2008 or until their writ of
execution was returned unsatisfied in 2010, then it follows that
the Maroldas had no protected property interest when the Consent
Decree was approved in 2002, and the insureds were free to

consume their insurance coverage in settling their liability to the United States and the State of New Jersey.  In other words, the Insurers' policies, in which coverage for the activities of SJCC and GSC was hotly contested, were within the realm of permissible compromise by the insureds SJCC and GSC in order to fund the CERLCA settlement.  There is no indication of collusion or fraud to deprive the Maroldas of a future benefit, since the Maroldas had undeniably asserted no claim against SJCC or GSC before the Consent Decree's approval in 2002.

It is a practical and recurring reality in Superfund litigation for remediation of hazardous waste sites that the PRPs may be defunct or otherwise insolvent and that the government may look to the insurers of the PRPs as a potential source of funding for response costs and remediation.  <u>See</u> Jerome B. Simandle, <u>Resolving Multi-Party Hazardous Waste Litigation</u>, 2 Vill. Envtl. L.J. 111 (1991).  One of CERCLA's main purposes is to hold "responsible parties financially accountable for the costs associated with remedial or removal action at hazardous waste facilities."  <u>Tippins Inc. v. USX Corp.</u>, 37 F.3d 87, 92 (3d Cir. 1994).  Indeed, "Congress enacted [CERCLA] . . . in response to the serious environmental and health risks posed by industrial pollution," <u>Burlington Northern and Sante Fe Ry. Co.</u>, 556 U.S. 599, 602 (2009), and resolution of these cases by negotiation and settlement is to be encouraged.  In the present case, it became

clear that SJCC and GSC (and their respective operators, officers
and shareholders) did not have sufficient assets to repay the
costs incurred by the United States.  (Gov't Opp. at 2.)
Although the United States and State of New Jersey had no claims
against the insurers, representatives of the insurers were
invited to a settlement conference before then Magistrate (now
District) Judge Robert Kugler.  That court-supervised process
eventually resulted in the negotiated settlement, before a
mediator, that was the subject of the Consent Decree.  Id. at 3.
The government, the PRPs and the Insurers achieved a "cash-out"
settlement, that is, the PRPs paying into the settlement receive
a covenant not to sue, with reopeners, for the payment of money.
Id. at 8.  The CERCLA settlements of the federal and state cost
recovery actions were intertwined with the PRPs' settlement of
the declaratory judgment actions pending in state court.

    Assuming for the sake of discussion that the Maroldas had no
pre-existing property right in these insurance policies under New
Jersey law as of 2002, the provisions of the CERCLA settlement,
and specifically the PRPs' concession of no further coverage for
any future claim against the policies, provided recognition and
agreement that these policies could not be the source of payment
on unknown future claims arising from the sites.  Without such
assurance, it would not be possible to forge a "cash-out"
settlement that obtains the last available dollar for reimbursing

response costs.   Thus, the government released any claims it might have for past or future response costs, absent the specific statutory reopeners mentioned in the Consent Decree but untriggered to date.

Where there is no pre-existing claim asserted and no protected property interest recognized in some third-party, a CERCLA settlement can and does foreclose the later assertion of a claim against an insurance policy that no longer provides coverage to the PRPs due to the compromise settlement agreement. Where the public benefit of remediation and cost recovery is at stake, the finality of the respective obligations of the PRPs (subject to the statutory reopeners)[5] and their insurers becomes a necessary element driving a CERCLA settlement.  That the terms of such a release may diminish or eliminate policy coverage for future claims, and thus impair the prospects of recovery by innocent third parties, is no different from the operation of a settlement or judgment that uses up the tortfeasor's assets.  No case has been found that would require parties settling a case to hold some money or other assets of the debtor aside for the sake

---

[5] Within the Consent Decree at ¶¶ 28-30, the United States and the State of New Jersey reserved the right to seek further relief against the PRPs, including additional response costs and remedial actions if "conditions at the sites, previously unknown to EPA, are discovered; or . . . information, previously unknown to EPA, is received in whole or in part and those previously unknown conditions or that information together with any other relevant information indicates that this remedial action is not protective of human health or the environment."

of satisfying future claims of unknown claimants.

For these reasons, due process does not require either notice or an opportunity to object to a proposed CERCLA settlement to be provided to unknown persons who may have some future claim but presently have no recognized property interest. Thus, if the Maroldas' property interest in the coverage provided by the Insurers' policies of insurance did not exist when those policies were compromised and paid in to fund the CERCLA settlement, the site releases included in that CERCLA settlement will be enforced to bar claims against insurance policies for non-existent coverage.

## IV. SCOPE OF THIS DECISION

The Court finds it prudent to address the scope of this decision and specifically discuss what is not being decided by the Court. In particular, the Court is not deciding in this opinion when the Maroldas were injured, whether the insurance polices were in effect at this time, or whether the Maroldas have a protected interest under Dransfield v. Citizens Casualty Company of New York, 5 N.J. 190 (1950), and N.J.S.A. 17:28-2.

There is a colorable argument that N.J.S.A 17:28-2, along with the Dransfield case law, provided the Maroldas with a protected property interest in the insurance polices that pre-existed the execution of the 2002 Consent Decree. In that event,

45

the Insurers and the PRPs could not agree to extinguish an interest in their settlement agreement that neither of them possessed, namely, the right of an injured party to bring a direct action against the insurer when a judgment against the insured is returned unexecuted, pursuant to N.J.S.A. 17:28-2.

This issue, however, will not be decided by the Court.  This issue arising under New Jersey law shall be reserved, in the interest of comity, to the state court.  If the state court finds that the Maroldas had a protected interest in the insurance policies at that time of the 2002 Consent Decree, this Court holds that the Consent Decree does not preclude the litigation of such a claim.  If the state court finds that the Maroldas had no protected interest in the insurance policies when the 2002 Consent Decree was approved, then the Consent Decree will be enforced to bar recovery against the Insurers under N.J.S.A. 17:28-2.

Finally, this Court does not hereby reopen the 2002 Consent Decree.  It has examined its provisions and provided an interpretation that comports with the requirements of due process, while recognizing the primacy of the Superior Court to determine the nature and extent of the Maroldas' property interest.


**V.   CONCLUSION**

For the reasons discussed herein, the Court has interpreted the Consent Decree to not bar a direct claim by the Maroldas against the Insurers if the Maroldas had a protected property interest in the policies of insurance prior to September 25, 2002, which is a determination of state law to be made in <u>Marolda Farms, Inc. et al. v. Maryland Casualty Insurance Co., et al.</u>, Docket No. Atl-L-861-11.  The Superior Court may adjudicate the nature and timing of the Maroldas' alleged property interest in the Insurers' policies of insurance under N.J.S.A. 17:28-2, as well as all issues other than interpretation or enforcement of the Consent Decree entered herein in September 2002.  The Court has also interpreted the Consent Decree to preclude a direct claim by the Maroldas against the Insureds if the Maroldas did not have a protected property interest in the policies of insurance prior to September 25, 2002, which again is a determination of state law to be made in the <u>Marolda Farms</u> matter.  The accompanying Order will be entered.


**September 30, 2013**                    **_s/ Jerome B. Simandle_**
Date                                      JEROME B. SIMANDLE
                                          Chief U.S. District Judge